Good afternoon, ladies and gentlemen. I'm glad you could be here for this session and appreciate you coming in from Arizona. We'll hear the argument then in the case of Bobbitt v. Milberg. May it please the Court, Lawrence Kasten for the appellant. I'll try to reserve five minutes for rebuttal. I'll also begin with choice of law unless, of course, the Court directs me otherwise. This case involves allegations of in-court litigation malpractice and allegations of violation of court orders and court standards in an Arizona action. The defendants don't appear to dispute that states have a compelling state interest in regulating the practice of law by attorneys who submit themselves to the state's courts, yet despite the obvious and weighty Arizona interests here, which apply with respect to all of the class members, the district court held that the state where a class member happens to live has a more significant interest. It found that two of the restatement factors, place of injury and domicile, supported its rulings, and in doing so it committed no fewer than three separate and significant errors, any one of which requires reversal. First, it overemphasized the place of injury factor in the applicable restatement section. Second, compounding that first error, the Court found that the place of injury in this malpractice case is not where the malpractice occurred, but instead merely where the class members happened to live. And third, with respect to domicile of the parties, the Court appears simply to have misread the plain language of the restatement. The Court appears to have interpreted it as asking only about where each individual plaintiff resides, when in fact the restatement compels the courts to look at the domiciles of all the parties. The Court's undue emphasis on place of injury. The comments to restatement section 145, which I believe both sides agree is the key restatement provision here, indicate that place of injury should be given weight where, but only where, the place of injury matters. That is to say there should be a nexus between the place of injury and the type of claim that's alleged. But where the injury is difficult to ascertain, where it's a happenstance, where it bears little relationship to the tort, it typically is not given weight. And here that's exactly the case. The question where did this injury occur is quite abstract. The question when did the injury occur, for fixing the question when did it occur, is equally abstract. The damage here, the injury here, is the loss of a claim for damages resulting from malpractice. And the malpractice claim, to add yet another level of abstraction, is itself a substitute remedy for the underlying security action, but for what the class alleges was malpractice. Pecuniary injury, economic injury. The place where a class member happens to live at a given time, which the District Court viewed as the place of injury, bears little, if any, significance in this kind of case. But that actually brings me to the second error that I mentioned. Even if place of injury is entitled to weight, the District Court was simply wrong here about where the class members were injured. The malpractice here was in Arizona. Again, the class's claims relate to in-court litigation malpractice in an Arizona action. Defendants are alleged to have violated Arizona court orders, Arizona court rules, to which they had agreed to be bound. The defendants are alleged to have fallen short of the standard of care that's set by the Arizona rules of professional responsibility, which are incorporated by reference in the Arizona District Court local rules. And, of course, what the class members believe they lost here was the possibility of obtaining a judgment or a settlement in a class action that would have been administered in Arizona by an Arizona court. We cited a number of cases that for in-court litigation malpractice, the place of injury is the state of the court. That's page 33 of our opening brief, footnote 12. There's been another recently decided case that we noted in a supplemental authority letter. It's the Ace American v. Sandberg case that reached the same conclusion. And as far as I'm aware, the defendants haven't cited a malpractice case involving violation of court orders or standards in which the court has held that the place of injury is other than the court in which the malpractice is alleged to have occurred. Counsel, can I ask you some questions about the Johnson case from the Second Circuit? Absolutely, Your Honor. Because I do think it's distinguishable from our situation, but I want to confirm my understanding. In Johnson, I was trying to remember, was in that case, was there an initial class certification like there was in this case in the underlying action? I don't recall, Your Honor. Maybe perhaps your counsel, your colleague, when you come back for a bullet, you can answer that question. And then the other question I had for you in Johnson is that, I mean, there is this Johnson case. Yes. And they vacated a certification of malpractice. Walk me through why we shouldn't follow that case. There's no dispute that there are many kinds of malpractice that will end up occurring in the same place that the class member lives. And so the claim in Nextel is that the plaintiff's conduct alleged to have been malpractice didn't involve something that happened in another court with respect to the plaintiffs. The claim in Nextel was basically that the plaintiff's employer, Nextel, and the plaintiff's client, had an inefficient performance, the alleged breach of fiduciary relationship. And that occurred, the Court said, in all of the different places where the law firm convinced the clients to do that. So under the restatement, I think the Johnson court asked precisely the right question. It said, where did the inadequate representation occur? And as I said, it concluded that it occurred in all those places in which the defendants were steered wrongly into agreeing to this dispute resolution. But if one asks the same question in this case, where did the malpractice occur, the answer is different. It happened in Arizona. It happened when the defendants, we say, we allege, when the defendants filed their late disclosure, and as a result, the claims ultimately were lost. And I think that's the key distinction for Johnson. Are you aware of any cases where you have a class that was certified? Like this, I mean, to me, this is a very unique case. We have a class that's actually certified, then something happens not related to the merits of the case, which causes the case to be thrown out. And then there's a malpractice suit brought, effectively trying to, in a sense, revive the earlier case through a different vehicle, this time against the lawyers, and the class was then not certified. Where you have it certified here, malpractice loses, and then it's not certified to try to rectify the situation. Were you aware of any other cases? I'm not aware of any case either way. I sort of wish I were of one that made clear that it's proper to go forward in that circumstance. What I do think is there are many kinds of cases, class actions that could be brought alleging malpractice where the malpractice would have occurred in each class member's home State. But this, like Johnson. But this simply is not that kind of case, Your Honor. The third error that I mentioned relates to domicile. The Court seemed to think that under the Restatement's domicile factor, it was required to look only at each particular class member's home State in isolation. Subsection C of Restatement, Section 145, by its plain terms, says the Court should consider the domicile's residence as a place of business of all the parties and not just the plaintiff's one at a time. And the comments, I think, more significantly, indicate that this factor, the domicile factor, is to be given weight only if there's a significant grouping in one State but not the other. And so what the District Court sort of did here is that it, in footnote 14 of its decision, it said, well, I'm going to ignore the defendant's residences here because there are so many class members. And so the fact that there are these six defendants from six different States doesn't matter. But I think that what happened there is that the Court got a little bit caught in the switches. If one views this case collectively, as the District Court seemed to think one should, then there are thousands of parties in every State. And it's impossible to say that there's a significant grouping in one but not the other. If instead one views this case as a collection of thousands of individual claims and looks at each claim individually, again, Arizona law would apply to each of those individual claims. Imagine this were just a single Iowa plaintiff suing these very same defendants, very same allegations. Suppose these defendants had, for whatever reason, undertaken to go into Arizona court and bring a claim on that Iowa plaintiff's behalf. Well, then you would have an Iowa plaintiff and then you would have six other parties in six different States, Florida, New York, Washington, D.C., Virginia, New Jersey, Arizona. Those are the places the defendants reside. And so in that case, again, there would be no significant grouping. And you could do this analysis for every single class member. And for every single class member, Arizona would have this overarching and compelling State interest in regulating the practice of law and what happens in its State's courts. So that's the domicile factor. If the Court has other choice of law questions, I'm happy to address them. I'd also like to touch very briefly on judicial estoppel. I think it's ‑‑ excuse me. I think the parties' positions are pretty well staked out in the briefs, the defendants echoing what the district court said seem to suggest that judicial estoppel shouldn't apply when the claims were made in a motion to dismiss. We cited authority and I think made arguments to the contrary. Just a few points to highlight. First is that the defendants claim that they were forced to invoke Arizona law in their motion to dismiss by the liberal motion to dismiss standards. And that is the centerpiece of their argument. I think it's simply incorrect. The named plaintiffs in this case asserted and alleged that they were Texas residents, and they are Texas residents. If the defendants believed what they're now telling the Court is the case, is the law, that the law of a class member's residence must apply to his or her claims, then they most certainly did not take the facts as pled in the complaint as true when they invoked Arizona law. The second point I'd make on judicial estoppel is that it's a bit inaccurate for the defendants to suggest, I think, that they merely assumed at the motion to dismiss stage that Arizona law must apply. They did more. They made an affirmative reasoned argument for use of Arizona law, and that argument led to dismissal of the plaintiff's second amended complaint. Roberts, I have a question for you, counsel. Are you aware of any cases in which this Court or any other court of appeals has held that a district court's refusal to apply judicial estoppel was, in fact, an abuse of discretion? No, Your Honor. But with respect to the standard of review here, let me just say that I think the fairest reading of the district court's decision is that it was premised, the pillar on which it's premised, is this notion that assertions made in motions to dismiss simply don't count. And I think whatever we call that, a legal conclusion, a mixed question, if this Court were to disagree, if it were to say, no, under our law, we think that assertions made in motions to dismiss, if the elements of judicial estoppel are met, can be judicial estoppel, if you remove that pillar, the entire analysis collapses. So with respect to standard of review, I think this isn't the kind of case where the district court clearly exercised some considerable discretion based on a number of different factors. That, I don't think a fair reading of the district court's opinion permits it to stand if that pillar is removed. But the district court, while not enumerating the test, clearly talked about whether the contentions were inconsistent, whether they were successful, issues of unfair advantage. So it sounds like the application was there. And if that's the case, aren't we really on the deferential standard as opposed to de novo? I think, especially with respect to the last issue about whether there was an undue advantage, if the district court addressed it, it's pretty veiled in there. And it certainly didn't walk through the factors in a reasoned way that I think would allow this Court to say to review, well, was there an undue advantage gained here? And even if it did, it's pretty clear that there was. The entire reason that we're here is because they changed position. By untethering themselves from their prior position, they made their claim stronger and, in fact, were able to win on certification. And that's exactly what's required under this Court's law. That's the Baumann case. That's the Marilyn Monroe case. In the Baumann case, the plaintiff changed her position with respect to whether she needed a wheelchair. And by doing so, she made her ADA claim stronger. The Court said that's an unfair advantage. The Marilyn Monroe case, the Monroe estate changed its position on where Monroe was domiciled when she died. And by doing so, it gave itself better arguments with respect to rights of publicity, I think. And that's exactly what's happening here. By changing positions, the defendants have made their arguments to beat back certification more strongly. I could talk about jurisdiction if the Court would like. I think it's now been pretty dispositively decided by two recent cases that were decided while this case was on appeal, the Berger and Baker case. In each case, the Court held that an order rejecting class certification as a final order in the name plaintiff, if they voluntarily dismiss their claims, then the case can go forward on appeal. I think that's dispositive. So unless there are questions, I'll reserve the rest of my time to answer Judge Owen's question and otherwise give rebuttal. Thank you. Roberts. Thank you, counsel. May it please the Court. My name is Douglas Pepe. I'm here with my colleague Jeffrey Zeger. We represent the Milberg defendants, and I'm arguing today on behalf of all defendants appellees. There's a great deal of appellants' brief addressed to the question of immunity. This case is not about immunity from malpractice. It is exclusively about the requirements of Rule 23 and whether the plaintiffs below satisfied those requirements. And the issue before this Court, as I see it, is relatively straightforward. It's whether this appellant and the two plaintiffs who preceded this appellant can bind a million people with State law claims, 1 million people who live in each of the 50 States, to their choice of Arizona law. The district court in this case concluded that they could not, and we think the district court got it right. They raised two and only two points of error here, and with respect to both, we submit the district court was correct. The first issue they raised, they raised it second in their argument, but it's first in their briefs, is judicial estoppel. The elements of judicial estoppel under New Hampshire v. Maine are threefold. The first is the most important. There must be an inconsistency in the position taken previously and subsequently. Here, there was no inconsistency of any kind. The Johnson case addressed this question. Didn't use the words judicial estoppel. But the issue in Johnson was whether Nextel, which argued in the motion to dismiss that form law, their New York law, applied, took the motion to dismiss up on appeal. The Court of Appeals, in the earlier decision, applied New York law. Subsequently, on class certification, the Court said, we and the parties, despite the fact that the parties agreed on New York law before, we are free to address our rigorous analysis to the facts as they exist before us, and concluded that non-form law applied there. The same analysis applies here, despite the fact that the words judicial estoppel were not used in the opinion. And they cited to the Bobbitt decision below for their principal authority on this issue. Now, on the motion to dismiss, as Johnson pointed out, the standard is very markedly different from the rigorous analysis that must be done on class certification before you can bind absent class members. I can't agree to bind absent class members. The Court had to conduct an analysis. And that analysis yielded a choice of law, and that choice of law was the law of each of the 50 states. Now, we had to assume certain facts were true, and there were a number of facts that were germane to the choice of law analysis as we wrote that footnote in our brief that I'll point out to the Court. First, they alleged that a substantial number of the events giving rise to their claims occurred in Arizona. Second, Judge Owen, they alleged that a class was, in fact, certified. Well, in this case, there was an order granting Milberg's motion for class certification in the Durnett case. That was not a Rule 23C2B order. Rule 23C2B order requires that the class be defined. Here, there was no class definition. And, in fact, the class definition was in flux. It requires that the class claims and defenses be set out in the order, and it requires that class counsel be appointed. There was no Rule 23G order in the underlying litigation appointing Milberg as class counsel. Milberg was never appointed class counsel. Milberg was appointed lead counsel early on in the case, which, under the PSLRA, is the choice of lead plaintiff for the counsel that will represent the class when the class is certified. There was no Rule 23G order, and there was no order satisfying the strictures of Rule 23C2B. Now, with respect to the conduct, they said a substantial amount of the conduct occurred in Arizona in their Second Amendment complaint. Well, the two principal bases for malpractice liability here were, one, the failure to provide notice of the district court's vacater decision. That's their breach of fiduciary duty claim. Two, the failure to provide damages disclosures under Rule 26. Milberg's damages disclosures would never have been filed in the District of Arizona. Under Rule 5 of the Federal Rules of Civil Procedure, damage disclosures are not filed, they're served. Milberg was in New York, and they were lead counsel. Both of those things, there is no evidence that either of those things would have occurred anywhere outside of New York. This was not in-court litigation misconduct. But it was in violation of the local rules and the orders of the court in Arizona. Well, it's an interesting issue, Your Honor, with respect to the State's interest versus the Federal Government's interest versus the interest of the various jurisdictions. When you violate a rule of ethics in Federal court, the underlying litigation here was not an Arizona case. It was not an Arizona court. It was in the Federal District Court of Arizona, which incorporates by reference the Arizona ethics rules as its ethics rules. Arizona, the State, has no interest in the underlying rules. Well, initially it was filed in State court and removed, wasn't it? Correct, Your Honor. At the time of the alleged malpractice in the vacator, however, there were three Federal claims at issue in that case and no State law claims. What they claim they lost are the three Federal claims, not the State law claims. But when you're looking at Arizona's interest, there is no interest of Arizona in this case because it was an exclusively Federal case at the time of the vacator. And in respect of whether conduct regulating or loss allocating functions are the functions of malpractice liability, ethics rules provide conduct regulating rules for counsel. Malpractice liability is designed to recompense the victims of malpractice, the clients. The State with the greatest interest in that issue is the State where the client resides. I assume, though, in a case like this that if you're going to be filing a lawsuit in Arizona, you make sure that you have malpractice insurance in the State of Arizona, correct? I haven't analyzed that question, Your Honor. But my firm, for example, practices in multiple jurisdictions. And I believe that when you obtain malpractice insurance and you're a national counsel, you get it for each of the 50 States because you can be sued in each of the 50 States. Did the lawyers in this case have to move ProHoc V.H.A. to? They did. They moved ProHoc V.H.A. into the Federal District Court for the District of Arizona, not an Arizona State court. Right. But I assume normally when you do a ProHoc, you admit to apply, you admit to abide by the local rules of that district, which then usually incorporate the bar rules of that State, correct? No question, Judge Owens. The issue isn't whether they were subject to the ethics rules. The ethics rules are separate and apart from the question of malpractice liability. Malpractice liability is geared towards recompensing the clients. Ethics rules apply on their own accord to govern the conduct of attorneys. You can incorporate a standard of care from an ethics rule, general ethics rules, the State's ethics rules. In this case, the standard of care with respect to the district court's decision on duty was an ethics rule. We disagree with it, but you can incorporate those rules. But the essence of the tort, the purpose behind the tort is recompense. And if you look to the restatement, we'll get to the choice of law analysis in a moment, but if you look to the restatement itself, in the text of the restatement, in the section that relates to important issues governing all types of tort claims, 156, 159, 157, and 160, it states in the text of the restatement itself that with respect to the conduct, whether the conduct is tortious, with respect to the standard of care, and with respect to causation issues, all three issues, the usual law that applies is the State where the injury occurs. That's because the purpose of tort law generally and the purpose of malpractice exposure specifically is to recompense the client for what they claim to have lost. It's not to govern the conduct of attorneys. That's what ethics rules are for. So the remaining two elements of judicial estoppel have been addressed briefly. I'll address them briefly. Here, there's no question that the district court was not misled in any way. If the district court felt misled by what we did, I'm certain the district court would have said it. And there was no suggestion in the opinion, and there's no fact to demonstrate that we misled the district court in any way. And finally, with respect to unfair advantage and unfair detriment, there's nothing unfair about requiring plaintiff's counsel, who are seeking to bind a million people to their choice of law, to prove the elements that are required to do that. On class certification, it was their burden and it was the district court's obligation to satisfy the Rule 23 factors. Whether we did or did not agree on the motion to dismiss to the application of Arizona law, the district court had to conduct its own analysis. And there's nothing unfair about the district court requiring the plaintiffs to satisfy their burden, to give him the tools that he needed to do it. And he concluded that they did not. So I'll turn to the choice of law issues. There are four elements, as the court knows. The place of the injury, the place of the conduct causing injury, the domicile of the  Place of injury, here, there was a factual finding. The district court concluded, as a matter of fact, subject to a clearly erroneous standard on review, that the place of injury was the place where each of the 50 class members in the 50 states, the million people, lost their economic rights. They didn't get a check. This is on ECF 213 at 6. Plaintiffs admitted below that the injury here is purely financial. They didn't get a check. They would have gotten a settlement. They would have gotten a judgment at the end of the case. They would have gotten a check. Well, they would have gotten that check if there was an injury in the place where they were standing, in the place where they lived. They wouldn't have gotten it in Arizona. They had no connection to Arizona. Bobbitt and Sampson didn't even know the Arizona litigation existed. But they only would have gotten the check if the judge in Arizona approved the settlement under Rule 23, right? That's correct. So, I mean, the entitlement arises in Arizona. Well, what they lost was the check. The things that led up to that loss, whether the judge would have done this or done that, whether the judge would have issued an order or not issued an order, that's all part of the case within the case proof that they have to establish. But in terms of the injury itself, the injury itself was the loss of that check. It wasn't the district court didn't get a chance to approve the order. It was that the district court didn't approve an order because you didn't prove your case, and we didn't get the check as a consequence. But is it the check or the cause of action, ultimately, that is the race that they are seeking? I mean, that's the fundamental question in my mind. Interesting. That's a good question. That's a good question, Judge Battaglia. They never alleged below, and I believe they've waived, that they lost the cause of action. They said, in ECF 213 at 60, where the injury is financial as here, they alleged a purely financial injury. And that is their argument. They don't allege that they lost the claim. And I think the reason they never alleged that, never asserted it, is because none of the absent plaintiffs lost the claim. This was a class action below. When the district court vacated the class certification order, the plaintiffs lost nothing. They could have filed actions the very next day. They had their causes of action, and they did not lose them. So as a consequence of that, they didn't lose anything based upon what Milberg did. Now, they've got the breach of fiduciary duty claim, which says that Milberg should have notified us. Rule 23 doesn't require that notice. But to the extent malpractice rules require that notice to have been sent, theoretically they could have lost that claim, but they didn't assert it here. They didn't say that we lost the claim because of what Milberg did. They said basically we lost the financial benefits of the litigation. Now, it's important to point out, I think, to the Court, in Appellant's brief, that the opening argument is predicated on Comment E of the Restate. And they say place of injury here isn't very important. It's very important in personal injury cases. It's not important here. And they do that by putting in a big block quote from Comment E. They put in the first sentence of Comment E, which says place of injury is very important in a personal injury case. Then they put in an ellipsis. And in that ellipsis was the next sentence, which said that the place of injury is equally important in the context of other kinds of torts. The Restatement Comment does not say the place of injury is not important in financial cases. And we've cited to the Spence v. Glock case. I haven't heard any argument to the contrary. But Spence v. Glock is the Fifth Circuit's decision that said in a pure economic loss case that place of injury is very important, cited to the sentence that they excised from their brief, and held that the place of injury was where each of the 50, each of the class members resided in the 50 States. Johnson is another case in the District of Arizona that says in an economic loss case, the place of injury is the most significant factor. That's the District of Arizona. They also argued in their briefs that the place of injury here is fortuitous. Well, there's nothing fortuitous about plaintiffs in an economic loss case losing the economic benefits that they claim in their home states. The Restatement doesn't say that. The Comment doesn't say that. None of the cases they cite say that. And Spence v. Glock says in an economic loss case, quote, it cannot be true that the place of injury is fortuitous. Fortuitous cases are cases involving plane crashes where the plaintiff takes off from their home state, crashes in another. Or where the wife, one of the cases the parties cite, the wife, her husband was in the Army and she left her home state, suffered an economic loss where she was temporarily residing and then came back to her home state. That's fortuity under the meaning of the Restatement. This was not a fortuitous injury. If there was an injury here, this was a direct financial injury in the states where each of the million class members are. They cite a host of cases. Well, I guess it was fortuitous in the sense that the lawsuit was brought in Arizona and the damages would have been awarded in Arizona. Actually, Your Honor, I think that the only fortuity in this case is where the case was. The underlying litigation, again, was a Federal litigation at the time of Vacator. Valleck was in Texas. The named plaintiffs in the underlying litigation happened to be Arizona residents. That litigation, the Federal claims, could have been brought anywhere where Valleck was subject to personal jurisdiction. The state that one would think it would be brought is where Valleck was, which was Texas. The fortuity here was where the litigation was, not, and I repeat, not where the injury was suffered. Not where the initial injury was suffered. Correct. But there's a difference between the injury that suffered as a result of malpractice or alleged malpractice in Arizona versus the underlying injury that occurred in all 50 states. Well, Your Honor, the injury is the same because the case was in a case doctor. So they have to prove that they would have had a claim that they would have succeeded in the claim in the underlying litigation. And then as a consequence of that, because of the alleged malpractice, they didn't get the benefits. And they alleged that it was purely financial. Right. But that's just a measure of damages issue. It's not an injury. That's correct. The economic injury actually occurred in Arizona, didn't it? Well, Your Honor, I'll give you an example. A plaintiff in Tennessee, Oklahoma, New York, that plaintiff had no connection of any kind to Arizona. They didn't lose the check in Arizona. No, I understand that. They lost the check where they are. We're talking about in the underlying case, that's certainly true. And in this case as well. At the end of the day, in this case, if there was a recompense for the plaintiffs for the absent plaintiffs, those plaintiffs would have received the recompense, the same recompense that they claim to have been entitled to in the underlying litigation. They're the same. The damages are the case within a case and the benefits of it. So they cite to a number of malpractice cases. We cite to a few malpractice cases. At bottom, none of those cases really address the question here because this was a class action. And a class action is different than a case where I'm a client, I hire an attorney, I say, please go defend a case for me in a particular jurisdiction. I have claims to be brought there or I'm defending claims in that jurisdiction. If I lose those claims, I have lost something in that jurisdiction. That's different than this case because the plaintiffs had no connection to the jurisdiction. They didn't direct counsel to litigate anything there. This case could have been brought anywhere in the 50 States. Roberts. But, counsel, if that's the case, then the plaintiff's attorneys in this case decided to bring this lawsuit in Arizona, correct? Correct. Shouldn't that have some bearing, then, if they choose to bring this lawsuit in Arizona and they do what they allegedly did? Why isn't that enough to say that Arizona lost your control? They agreed to abide by the rules of that State and they didn't do it. Well, I think fundamentally, Your Honor, the issue is can this court or can the District of Arizona in this case bind a million people to our choice of Arizona for the forum or even on the estoppel issue our choice to move on the motion to dismiss under Arizona law? They have their claims. They have their claims to the extent they still have them, to the extent they wish to assert them in the jurisdictions where they are, in New York, in Texas, in Oklahoma. But isn't that always an argument made in class actions? I mean, if you were right about that, then I would assume we would never have class actions because you could always bring it, your lawsuit, somewhere. Well, Your Honor, class actions involving multiple States' laws. First of all, they concede that if you apply in this appeal more than one State, if you apply to 50 States, there's no superiority and there's no class or no appropriate class treatment. But class actions all the time are denied on the basis of the fact that the plaintiff's laws. That's why we have mass actions in this country. That's why we have an entire field of practice called mass torts. Fen-phen. You know, there are many cases where you have to bring cases either on a State-by-State basis with individual State subclasses, issue-by-issue subclasses, or on a mass action basis. And the reason for that is you cannot manage a class action involving distinct legal issues on every issue in the case. I'll give you an example. Missouri is a State that may not require the case-within-a-case doctrine. A Missouri plaintiff in this case who wanted to sue Milberg, and I'm not saying they could or should, and I don't think they'd be successful, but if they wanted to, their State does not require that they prove a case-within-a-case. This appellant and the plaintiffs below are seeking to bind that person to their choice of Arizona law, which does require the case-within-a-case doctrine to be established. That plaintiff is losing something because they're attempting to bind them to foreign law. It's an important issue. It's not a question of what the parties believe or agree to. This is a district court and this is a court of appeals applying a rigorous analysis to see if it comports with due process and with Rule 23 to bind a million people to what we do here. And those million people have claims in their respective jurisdictions. They have no connection whatsoever to Arizona. There's no evidence that any of them have been to Arizona. Bobbitt and Sampson didn't even know about the Arizona case's existence. And under these circumstances, we think that the appropriate law to apply is the law of the 50 States. Real quick with the million people. This is not an opt-out case? They couldn't opt out of the class? Well, Your Honor, the issue of governing law comes up in the context of Rule 23b3 opt-out cases and injunctive relief cases. It's the same issue. It's that, you know, regardless of the existence of an opt-out right, you still the court is required to apply a rigorous analysis and interpret the choice of law issues to get to the right result. The issue here is, I'm sorry, Your Honor. But someone in Missouri could just opt out of this case and they could still bring their case and avoid the case-within-a-case doctrine? They could to the extent they still have a claim. But the question is should they be bound to make that choice or should they have their claim that they have that exists today? They could have brought it. Labor could have brought a claim under Arizona law. Bobbitt and Sampson could have brought a claim under Texas law. The fact is those malpractice claims should not be bound up to an Arizona forum that in the context of this case is a mere fortuity. There's nothing that Milberg did that prevented anybody from recovering anything. They could have brought their claims. And if they claim to have lost those claims, they lost them in the jurisdiction where they would have brought them. There's no reason to suspect that they would have brought those claims in Arizona. A New York plaintiff would have brought it in New York if Alec was subject to personal jurisdiction there. I'll just briefly address the jurisdictional question. We've raised a number of alternative grounds as well. On jurisdiction, we ask that the Court seek on-bank review. We think there's an inherent conflict between Huey and Baker and Berger. So it wasn't reconciled by either case. We ask that the Court request on-bank review on that issue, and it's also pending an on-bank determination in the Baker case. I see that I've got 13 seconds over, so I thank you for your time. Roberts. Thank you, Counsel. Thank you, Counsel. Will I rebuttal? The Johnson case, Judge Owen, it was certified. It was indeed. With respect to the comments about the place of injury factor in the restatement, the ellipses that Counsel referred to actually removed several sentences in which the Court walked through a number of the kinds of causes of action in which the place of injury matters because it has a nexus to the claim. Remember, the restatement is written for all torts, and those kinds of claims that it mentioned are precisely what one would expect, the kind of cases where there's a nexus between the place of injury and the cause of action. Physical injury, injury to tangible things, defamation, false imprisonment. And so what the restatement was talking about was precisely those kind of cases where the way I summarized it was place of injury matters. If the rule is to be that you are injured wherever you happen to stand at some particular moment in time, which I think is essentially how the district court viewed it, and I think what Counsel is arguing here, then the restatement wasted an awful lot of ink talking about how to ascertain where the place of injury is. And, Judge Pataglia, I would answer your question about whether it's the cause of action as opposed to simply saying that's where the bank account might have been by, again, noting that those comments appear to talk about cause of actions, false imprisonment, defamation, all the things that I just mentioned. A key point about the notion of absent class members suing in their home states if they don't want to proceed with this class action, the point here is that if they did so, if the Iowa plaintiff did, if Texas plaintiffs did, if they brought this suit in a court that, like Arizona, applies the restatement, then Arizona law should apply to this case for all the reasons that have been mentioned. The analysis under the restatement is the same. Any court that follows it should apply that analysis because that's where the malpractice occurred, because of Arizona's interest in regulating the conduct of lawyers that practiced before it. My understanding of the State of Arizona's bar is that it does, in fact, regulate the practice of law that occurs within its borders. I think it's absolutely right. That's why we have pro hoc vicee applications, and part of that application is to subscribe to the Arizona rules of professional responsibility, which are incorporated as the legal standards under Arizona case law for setting forth what the required conduct is for attorneys. Unless the Court has further questions. Roberts. Just one. Yes. You heard counsel describe the effect of the certification order in the underlying case. What do you think that order accomplished, in your view, and what didn't it accomplish? There's no doubt that the Court certified the class. That's unequivocal. It stated it absolutely. I think had there been an immediate appeal, there would be a significant question whether the order was substantial enough or had enough findings to be given deferential review on appeal. This Court may have even have remanded it for additional findings. But there's no real dispute that a class was certified. In fact, when Valak, the defendant, sought to challenge it, it knew enough to say that it was seeking reconsideration. And what the – how was the class defined in the order? It was defined as – it is the identical class that the plaintiffs in this action seek to represent. That is, it was defined in the complaint as those who had lost their investments by virtue of the omission about the tax redundancy. And it was defined as precisely the same class that's defined in our complaint.  Thank you. Thank you, Your Honor. All right. The case just heard will be submitted for decision and will be in recess. Thanks again for your arguments and for traveling here today. We appreciate it.
judges: Battaglia, Thomas, Owens